OFFICE OF DISCIPLINARY COUNSEL *v.* BOWMAN.

[Cite as *Disciplinary Counsel v. Bowman,*
99 Ohio St.3d 244, 2003-Ohio-3374.]

(No. 2002–2182—Submitted March 25, 2003—Decided July 16, 2003.)

**Per Curiam.**

{¶ 1} On February 4, 2002, relator, Disciplinary Counsel, filed a single-count complaint charging respondent, Scott Bowman, of Salem, Ohio, Attorney Registration No. 0058511, with several violations of the Code of Professional Responsibility. The respondent answered, admitting some allegations and disputing others.

{¶ 2} On July 26, 2002, a panel of the Board of Commissioners on Grievances and Discipline conducted a hearing. At the hearing, the parties agreed to amend the complaint by adding Count II, which charged a violation of DR 9–102(A) (attorney shall deposit and keep client funds in separate, identifiable bank account). The parties stipulated to the facts, exhibits, and disciplinary violations and jointly recommended a sanction. Additionally, respondent testified, and the panel received letters attesting to respondent's good character.

{¶ 3} The stipulations and evidence established that respondent was admitted to the practice of law in Ohio in May 1992. After admission, respondent joined the law practice of his paternal grandfather, George H. Bowman Jr. ("Bowman Jr.") in Salem, Ohio.[1] By the end of 1992, Bowman Jr. had ceased practicing law because of his advanced age, and respondent had taken over his law practice and

---

1. The probate court noted in a November 28, 2000 letter that respondent was the grandson of George H. Bowman Jr. until he was adopted with the consent of his father. "As an adult, at a later time, [respondent] regained the surname Bowman through a change of name proceeding, thereby giving the appearance that he remained George H. Bowman Jr.'s grandson. It does appear that the decedent * * * regarded [respondent] as [his grandson]."

had begun serving as his attorney. In January 1997, Bowman Jr. executed a will that respondent had prepared, and respondent's wife and 17–year–old son witnessed the will. Bowman Jr. had previously executed a will in 1992 and two codicils in 1995. Under the 1997 will, respondent was named executor and would inherit Bowman Jr.'s residence. In March 1998, Constance Rowe, the daughter of Bowman Jr., was appointed the guardian of her father.

{¶ 4} Bowman Jr. died on January 18, 2000. On the same day, Rowe filed in probate court an application to administer the estate of her father, Bowman Jr., and an application to admit the 1992 will and 1995 codicils to probate. On January 19, 2000, respondent filed an application to administer the estate and an application to admit the 1997 will to probate. Over Rowe's objection, the probate court in April 2000 admitted the 1997 will to probate, and respondent became the executor of Bowman Jr.'s estate.

{¶ 5} With respect to Count I, the record substantiates that respondent, while acting as the attorney and executor for the estate, advanced $86,000 to himself for attorney and administrator fees. Respondent did so, without any notice to the probate court, by writing seven checks on an estate account in May and June 2000. At the time, respondent had prepared no final accounting for the estate, as required by Sup.R. 71(B) and local probate court rules. Respondent had also not secured prior approval from the court to pay attorney fees, as required by Sup.R. 71(C) and local probate court rules.

{¶ 6} On July 10, 2000, at Rowe's request, the probate court ordered that respondent be removed as executor, that he receive no fees as fiduciary, and that an impartial fiduciary be appointed. On July 17, 2000, respondent turned over estate records to a successor administrator and gave the successor a check for $29,200 from respondent's IOLTA account and a promissory note for $56,800. In August 2000, respondent submitted the following claims to the successor fiduciary: (a) $32,988.28 for administrator and attorney fees for services to the estate, (b) $75,000 for legal services to Bowman Jr. from 1993 through 2000, and (c) $32,000 for personal services to Bowman Jr. from 1992 to 1995.

{¶ 7} In October 2000, the parties to a contest over the 1997 will, including Rowe and respondent, resolved their differences in a settlement agreement approved by the probate court. Under the settlement, the probate court admitted the 1992 will and 1995 codicils to probate and rescinded the order admitting the 1997 will to probate. Respondent agreed to assign his interest in leases of office buildings owned by the estate. Further, respondent relinquished, with the exception of one bequest, all of his inherited property rights under the 1992 will and 1995 codicils of Bowman Jr. Under the settlement, respondent retained the "$86,800" (sic) that he had previously received as full and final payment for attorney and executor services he provided the estate and for the

personal and legal services he provided to Bowman Jr. Pursuant to court order, respondent tendered a fiduciary's account, which the probate court received for reference only in view of the settlement agreement.

{¶ 8} As to Count II, the parties stipulated that from March through July 2000, respondent wrote 22 checks on his IOLTA account, amounting to a total of $55,841.54, for his personal use. Respondent agreed that although he may have been entitled to some of the monies as fees at the time he wrote the checks, he was unsure whether he had earned all of the funds that he withdrew for his personal use at the time he withdrew them.

{¶ 9} The parties stipulated and the panel agreed that respondent's conduct violated DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice), DR 1–102(A)(6) (engaging in conduct adversely reflecting on the attorney's fitness to practice law), and DR 9–102(A).

{¶ 10} In recommending a sanction for this misconduct, the panel considered the stipulated mitigating circumstances. The parties agreed that respondent had not previously been disciplined, no funds of any client or third party, including the estate, were missing as a result of respondent's actions, and no civil or criminal complaint had been filed against respondent in connection with the estate. Further, the parties agreed that no court had sanctioned respondent for his actions and that respondent had not harmed the estate or any person having an interest in the estate. Moreover, the parties stipulated that respondent's improper use of his IOLTA account had not compromised any client's interest. The panel also considered that respondent had spent ten years providing valuable services to his community, including serving for two years as an assistant city solicitor and volunteering for the Salem Planning and Zoning Committee, the Boy Scouts, and the Rotary Club.

{¶ 11} The panel recommended the sanction that was jointly proposed by the parties, namely, that respondent be suspended from the practice of law for one year, with six months stayed, and pay the costs of the proceeding. The board adopted the panel's findings of misconduct and recommendation. The board further recommended that the costs of the proceeding be taxed to respondent.

{¶ 12} Although respondent stipulated to the facts, the violations, and the recommended sanction, respondent now objects to the board's report and recommendation. Respondent argues that an actual suspension is not warranted because his actions constituted an isolated incident in an otherwise unblemished career and were not intended to deceive, defraud, or misrepresent. Respondent also emphasizes that he fully cooperated in the probate court's proceedings and relator's investigation. In response, relator argues that the stipulated sanction is appropriate.

{¶ 13} We adopt the findings and conclusions of the board and further find that the suspension and partial stay recommended by the parties, the panel, and the board are appropriate. Respondent's negotiation of seven separate estate checks to withdraw $86,000 for attorney and executor fees without securing the approval of the probate court or filing an accounting is a serious offense. In *Butler Cty. Bar Assn. v. Green* (1982), 1 Ohio St.3d 48, 1 OBR 92, 438 N.E.2d 406, we held that withdrawal of funds for fees from an estate checking account without approval of a court or the client represented "conversion of a client's funds to the personal use of the attorney" and violated DR 1–102(A)(4), (A)(5), and (A)(6), and 9–102(A)(2). In *Butler Cty. Bar Assn. v. Bradley* (1999), 87 Ohio St.3d 213, 718 N.E.2d 1272, we indefinitely suspended an attorney who had received $15,000 for attorney fees in two estates and used the money to pay his office expenses because he had not filed a final accounting or secured the required probate court approval. In *Disciplinary Counsel v. Kurtz* (1998), 82 Ohio St.3d 55, 693 N.E.2d 1080, we also indefinitely suspended an attorney who, as trustee, transferred over $75,000 from a testamentary trust to the attorney's business account.

{¶ 14} In this case, respondent described his practice as "generally a probate practice"; hence, he clearly knew that he was mishandling his grandfather's estate and violating court and Disciplinary Rules by withdrawing $86,000 for fees from an estate account without an accounting and prior approval of the probate court. His actions in writing seven different checks over a period of time and his mishandling of his IOLTA account were not an isolated incident of misconduct. Moreover, respondent's actions and violations of DR 1–102(A)(4), (A)(5), and (A)(6), and 9–102(A) warrant an actual suspension. "[W]hen an attorney engages in a course of conduct that violates DR 1–102(A)(4), the attorney will be actually suspended from the practice of law for an appropriate period of time." *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 191, 658 N.E.2d 237. See, also, *Erie–Huron Counties Joint Certified Grievance Commt. v. Miles* (1996), 76 Ohio St.3d 574, 577, 669 N.E.2d 831.

{¶ 15} Accordingly, respondent is hereby suspended from the practice of law in Ohio for one year, with six months of the suspension stayed on the conditions that respondent refrain from any acts in violation of the Code of Professional Responsibility and that respondent pay the costs of these disciplinary proceedings. If respondent violates either of these conditions, the stay will be vacated and the entire term of the suspension will be served. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, FAIN, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

MIKE FAIN, J., of the Second Appellate District, sitting for COOK, J.

Jonathan E. Coughlan, Disciplinary Counsel, Lori J. Brown, First Assistant Disciplinary Counsel, and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator.

Kenneth R. Donchatz, for respondent.